UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:22-CV-00098-GNS-HBB

WESTERN SURETY COMPANY                                                               PLAINTIFF

v.

BRETT NILES et al.                                                                         DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (DN 39) and Defendants' Cross-Motion for Partial Summary Judgment (DN 44).[1]  The motions are ripe for adjudication.

## I.  BACKGROUND

Western Surety Company ("Western Surety") brought this action against Brett Niles ("Niles"); Big Bear Leasing, Inc. ("Bear Leasing"); Big Bear Investments, LLC ("Bear Investments"); Bear Communications of New Mexico, Inc. ("Bear New Mexico"); and the Oaks Fame Farm, LLC ("Oaks") (collectively, "Defendants").  (Compl. ¶¶ 1-6, DN 1).  Western Surety is an Illinois company "that issues payment and performance bonds and stands as a surety for selected contractors."  (Compl. ¶ 9).  Niles, a Kentucky resident, is the sole owner of the companies that comprise the other Defendants.  (Compl. ¶¶ 2-6; Answer ¶¶ 2-6, DN 25).  Niles also owns Bear Communications, LLC ("Bear"), a construction contracting company that voluntarily filed for Chapter 11 bankruptcy in Kansas on May 28, 2021.  (Niles' Resps. Pl.'s Interrogs. 7, DN 40-17).

---

[1] Defendants' memorandum in support of their cross-motion is combined with their response to Plaintiff's motion, and this document is filed twice (DN 43, 44-1) for docketing purposes.  For simplicity, all references to that combined filing will be to DN 44-1.

1

In 2016, Bear sought to obtain a payment bond from Western Surety to submit bids for construction projects in Alabama. (Compl. ¶ 12; Answer ¶ 12). Bear executed two bonds with Western Surety in relation to the Alabama projects: the first bond, No. 58737827, was terminated on December 14, 2016; and the second bond, No. 58737859 ( "Bond 859"), was executed on February 23, 2017, is the bond at issue in the current case.[2] (Compl. Ex. 2, DN 1-2; Niles Decl. ¶ 3, DN 44-2; Pl.'s Reply Mot. Partial Summ. J. Ex. 5B 1, DN 45-3). In June 2016, as a condition of the first bond, Niles and Western Surety executed a General Agreement of Indemnity ("Indemnity Agreement"), with Niles agreeing to indemnify Western Surety for claims arising from work performed on "all surety bonds" issued by Western Surety. (Indemnity Agreement 1, DN 1-1). Niles signed the agreement on behalf of himself, Bear, Bear New Mexico, Bear Leasing, and Bear Investments. (Indemnity Agreement 5-7). On May 9, 2027, Niles executed a Rider to the Indemnity Agreement ("Indemnity Rider"), adding Oaks as an indemnitor. (Indemnity Rider 2, DN 40-3). There is no dispute between the parties that the Indemnity Agreement and Indemnity Rider apply to Bond 859. (*See* Pl.'s Reply Mot. Partial Summ. J. 3; Defs.' Reply Mot. Partial Summ. J. 2).

Bond 859 covered a project concerning the installation of "1,000 aerial and underground fiber network miles in the City of Huntsville, Alabama." (Pl.'s Reply Mot. Partial Summ. J. Ex. 5A 1, DN 45-2). Bond 859 listed Western Surety as the surety, Bear as the principal, and the Huntsville Electric Utility Board as the obligee. (Pl.'s Reply Mot. Partial Summ. J. Ex. 5A 1). To complete the project,

---

[2] Plaintiff initially indicated the incorrect bond number (i.e., No. 58737827) in its Complaint and subsequent filings. (*See, e.g.*, Compl. ¶ 16). This error was detected by Defendants, who pointed out that the first bond was terminated prior to the events giving rise to this case. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J. 2, DN 44-1). Plaintiff has supplemented the record with correct bond information, asserting that "all previously submitted record testimony concerning the Indemnitors['] obligations to [Plaintiff] applies with equal force to both of the payment Bonds." (Pl.'s Reply Mot. Partial Summ. J. 5-6, DN 45). Defendants acknowledge that Plaintiff has sufficiently supplemented the record and concede "there is no longer a failure of proof on that issue." (Defs.' Reply Mot. Partial Summ. J. 2, DN 46). The Court, therefore, will deem Bond 859 as supplanting any reference to the incorrect bond.

Bear contracted with several subcontractors. (*See* Niles' Resps. Pl.'s Reqs. Admis. 6, DN 40-16). Upon completion, Bear "sought final payment from the Board of a total of $1,740,976.00 in retainage for the Project[;] however, [t]he Board refused to pay Bear in full." (Niles Decl. ¶ 4). On May 22, 2021, the Huntsville Board and Bear reached a settlement agreement under which Bear was paid $1,082,127.57. (Huntsville-Bear Settlement 1, DN 40-18). At this point, no subcontractor had been paid, as all subcontracts with Bear contained "pay if paid" provisions, meaning that payment to the subcontractor was contingent upon payment to Bear. (*See* Subcontractor Agreement Excerpt 2, DN 44-3).

This led to six subcontractors seeking payment from Western Surety under Bond 859, either by bringing a civil suit under Alabama's Little Miller Act or threatening suit via demand letter. (*See* Genesis Compl., DN 40-5; RC Compl., DN 40-7; RBM Compl., DN 40-9; LTD Compl., DN 40-10; Frazier Demand, DN 40-12; L&M Cable Demand, DN 40-14). The Little Miller Act allows contractors to bring civil actions against payment bond sureties to recover "payment [that] has not been made" as well as reasonable attorney fees. Ala. Code § 39-1-1(b). Western Surety issued payments under Bond 859 to four of the six subcontractors and incurred legal expenses defending all six claims. (*See* Desantis Decl. ¶¶ 33-35, DN 40-1). Pursuant to the Indemnity Agreement, Western Surety sought reimbursement from Defendants for the bond payments and expenses. (*See* Letter to Indemnitors, DN 40-15). Defendants refused to reimburse Western Surety, disputing their liability under the Indemnity Agreement. (*See* Answer ¶ 28).

Western Surety brings this suit seeking reimbursement for the settlement payments made to the contractors, legal expenses incurred in defending the claims against Bond 859, as well as the legal expenses incurred in bringing the current case. (Compl. 12-13). Additionally, Western Surety seeks to compel Defendants to "post collateral . . . to protect [Western Surety] from all the losses and expenses that [Western Surety] has incurred or may incur in connection with the bond . . . ." (Compl. ¶ 45). Western Surety brought the following causes of action: indemnity (Count I); equitable

indemnity, reimbursement, and exoneration against the Indemnitors (Count II); *quia timet* (Count III); breach of Indemnity Agreement (Count IV); and specific performance (Count V).  (Compl. ¶¶ 29-45).  The parties have conducted discovery and now move for partial summary judgment.  Western Surety moved for summary judgment (DN 39) on its indemnity and breach of Indemnity Agreement claims (Counts I and IV).  Defendants have responded and moved for summary judgment (DN 44), seeking to dismiss Western Surety's claims to the extent they require Defendants to post collateral (Counts III-V).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [of] show[ing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).  Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim.  *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  "The mere existence of a scintilla of evidence in support of the [moving party's]

4

position [is] [ ] insufficient; there must be evidence on which the jury could reasonably find for the [moving party]." *Anderson*, 477 U.S. at 252.

### III. JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00.

### IV. DISCUSSION

#### A. Applicable State Law

Western Surety asserts that Alabama state law governs this case "because it is the law of the state which was the principal location of the insured risk under the [b]ond." (Pl.'s Mot. Partial Summ. J. 14, DN 39). Defendants do not contest this assertion and cite Alabama law in their response. (*See* Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J. 5-6). "Federal courts sitting in diversity apply the choice-of-law rules of their forum." *AEP Indus., Inc. v. UTECO N. Am., Inc.*, No. 1:14-CV-96-GNS, 2015 WL 1298556, at *3 (W.D. Ky. Mar. 23, 2015) (citing *NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004)). Therefore, Kentucky's choice of law rules must be analyzed to determine if Alabama law applies.

Kentucky follows the "most significant relationship test" to determine which state's laws govern the interpretation of a contract. *Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982) (citing *Lewis v. Am. Fam. Ins. Grp.*, 555 S.W.2d 579, 581-82 (Ky. 1977)). This test seeks to apply the law of the state that, "because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Id.* (citation omitted). Typically, this test is determined by balancing factors delineated in Restatement (Second) of Conflict of Laws § 188 (Am. L. Inst. 1971). *See Breeding*, 633 S.W.2d at 719 (citation omitted). Kentucky courts, additionally, have adopted Section 193 of the Restatement (i.e., "Contracts of Fire, Surety, or Casualty Insurance") "to supplement [the] § 188 analysis." *GEICO Indem. Co. v. Crawford*,

36 F. Supp. 3d 735, 741 (E.D. Ky. 2014) (citation omitted); *see also State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 879 (Ky. 2013).

> The Kentucky Supreme Court, adopting Section 193, has stated:
>
> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in sec. 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Lewis*, 555 S.W.2d at 582 (quoting Restatement (Second) of Conflict of Laws § 193). Thus, state law of "principal location of the insured risk" should govern the contract at hand, unless the factors of Section 6 of the Restatement indicate otherwise. *Id.* (citation omitted). Those factors are:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6.

In the current case, Bond 859, the Indemnity Agreement, and the Indemnity Rider all relate to an Alabama construction project, with the Huntsville Electric Utility Board named as obligee. (*See* Pl.'s Reply Mot. Partial Summ. J. Ex. 5B). Moreover, all six subcontractor claims against Western Surety at issue here concerned unpaid work for construction projects in Alabama. (*See* Compl. Exs. C-H, DN 1-3 to 1-8). Because all work performed under Bond 859 took place in Alabama, it is clear that Alabama was the "principal location of the insured risk during the term of the policy." Restatement (Second) of Conflict of Laws § 193. Furthermore, the Restatement factors support this finding. This case revolves around arguments under Alabama law that Defendants contend Western Surety should have raised with the subcontractors in its settlement negotiations. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J. 5-6). Applying Alabama law will "protect[] the

6

justified expectations" of parties and ensure "certainty, predictability[,] and uniformity of result" in analyzing the underlying claims. Restatement (Second) of Conflict of Laws § 6. Thus, the Court will apply Alabama state law in assessing the parties' motions.

### B. Motions for Summary Judgment

Western Surety has moved for partial summary judgment on its claims for indemnity (Count I) and breach of indemnity agreement (Count IV). (Pl.'s Mot. Partial Summ. J. 1). Defendant responded and filed a cross-motion for partial summary judgment on Western Surety's claims for a *quia timet* remedy (Count III), breach of indemnity agreement (Count IV), and specific performance (Count V) "to the extent that [those claims] seek to require Defendants to deposit collateral with [Western Surety] against potential future losses." (Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J. 9).

#### 1. *Time-Barred Claims*

Defendants' Cross-Motion for Partial Summary is based on the contention that "additional claims on the payment bond [Plaintiff] issued are time-barred under Alabama's Little Miller Act[;] [therefore,] there is no valid basis for [these] claims . . ." (Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J. 9). Western Surety has not submitted a response to Defendants' motion, but it has acknowledged that "[a]ny additional Bond claims under Alabama's Little Miller Act are unlikely because they are time-barred at this point." (Pl.'s Mot. Partial Summ. J. 11 n.2). Under the Little Miller Act, a civil action on a payment bond "shall be commenced not later than one year from the date of final settlement of the contract." Ala. Code § 39-1-1(b). The final settlement of the contract between the Huntsville Electric Utility Board and Bear occurred on February 22, 2021. (Huntsville-Bear Settlement 1). Therefore, no subcontractor on Bond 859 can bring a claim against Bear or Western Surety after February 22, 2022. Defendants, therefore, are correct and any future claim would be time barred by the Little Miller Act's limitations period. Ala. Code § 39-1-1(b). Because there appears to be no possibility of future claims, Western Surety's demand that Defendants

deposit collateral to defend potential future claims is moot. (*See* Compl. ¶¶ 36, 41, 44-45). Defendants' motion is granted, and Western Surety's claims seeking to require Defendants to deposit collateral are dismissed.

### 2. *Breach of Indemnity Agreement (Counts I and IV)*

Western Surety asserts that Defendants breached the Indemnity Agreement by failing to reimburse it for the funds expended in defending the claims against Bond 859 brought by the subcontractors. (Pl.'s Mot. Partial Summ. J. 19-20). Western Surety specifically seeks reimbursement for costs associated with settling disputes with six subcontractors: (1) Genesis Utility Communications, LLC ("Genesis"); (2) RC Underground, LLC ("RC"); (3) RBM Underground, LLC ("RBM"); (4) Leo Mendoza d/b/a L.T.D. Utilities ("LTD"); (5) Frazier Splicing and Construction, Inc. ("Frazier"); and (6) L&M Cable, Inc. ("L&M"). (Pl.'s Mot. Partial Summ. J. 7-11). Two of these disputes—RBM and L&M—did not result in any payment by Western Surety, as it was able to either successfully defend the claim or convince the subcontractor that the claim was untimely. (Pl.'s Mot. Partial Summ. J. 9, 11). In these cases, Western Surety only seeks reimbursement for the defense expenses incurred in responding to the claims. (Pl.'s Mot. Partial Summ. J. 9, 11).

The Court has reviewed the subcontractor claims as well as the declaration of Lisa Desantis ("Desantis"), an authorized representative for Western Surety who has provided details regarding how each claim was investigated and settled. (*See generally* Desantis Decl.). The specific amounts of costs incurred, delineated by claim, are provided below:

| Claim | Settlement Amount[3] | Alleged Costs and Fees |
|---|---|---|
| Genesis | $275,000.00 | $12,321.74[4] |
| RC | $290,000.00 | $18,006.40 |
| RBM | | $12,163.15 |
| LTD | $133,775.87 | $7,363.50 |
| Frazier | $32,000.15 | $2,320.00 |
| L&M | | $1,108.75 |
| Total: | **$730,776.02** | **$53,283.54** |

(*See* Genesis Settlement Payment, DN 40-6; RC Settlement Payment, DN 40-8; LTD Settlement Payment, DN 40-11, Frazier Settlement Payment, DN 40-13; Desantis Decl. ¶¶ 34-36). Additionally, Western Surety asserts that it has incurred $70,496.24 "in its efforts to enforce the Indemnity Agreement in the present action . . . and in its efforts, pre-suit, to investigate, demand compliance with the Indemnity Agreement, and to recover or attempt to recover property from the Indemnitors." (Pl.'s Mot. Partial Summ. J. 13-14). Thus, Western Surety posits the total amount due from Defendants under the Indemnity Agreement is $854,579.80.[5] (Pl.'s Mot. Partial Summ. J. 14).

The Indemnity Agreement contains the following language:

Indemnitors agree and covenant that they shall:

upon demand indemnify and save [Western Surety] harmless from and against any Loss which [Western Surety] may pay or incur. In the event of any payments made by [Western Surety] in the good faith belief of their necessity, the Indemnitors agree to

---

[3] Defendants do not dispute Plaintiff's settlement amounts. (*See* Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J.7 (note that Defendants list the LTD settlement amount as rounded to the nearest dollar)).

[4] Western Surety states that "Bear indemnified [Plaintiff] for some but not all of [Plaintiff's] costs of defending Genesis's claims against [Western Surety]." (Pl.'s Mot. Partial Summ. J. 8). Desantis states that Western Surety "makes no claim for defense costs and expenses that were initially paid by Bear arising from Genesis's claim." (Desantis Decl. ¶ 34 n.1). Therefore, it is understood that the amount sought is exclusive of the defense costs paid by Bear.

[5] It appears there may be an error with this calculation, as the sum of $730,776.02 + $52,283.54 + $70,496.24 = $854,555.80. For reasons stated below, the Court does not need to address the specific total amount, including attorneys' fees, at this time.

> accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitors' liability therefore to [Western Surety] . . . .

(Indemnity Agreement 2). The Indemnity Agreement defines "Loss" as:

> (a) any and every claim, demand, liability, cost, charge, suit, judgment, fee, interest on any amounts due [Western Surety], and expense, including but not limited to attorney fees and consultant fees incurred by [Western Surety] as the result of issuing or considering the issuance of a Bond; (b) any cost incurred by [Western Surety] in the process of procuring, or attempting to procure release from liability under a Bond; (c) the cost to [Western Surety] of making any independent investigation of a claim, demand, or suit arising under a Bond; (d) any cost incurred by [Western Surety] in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement; and (e) any other cost incurred by [Western Surety] in good faith as a result of having issued or procured the issuance of a Bond.

(Indemnity Agreement 1). Regarding the settlement of claims made against Bond 859, the Indemnity Agreement also provides:

> [Western Surety] shall have the exclusive right and power to determine for itself and the indemnitors and Principals whether any claim, suit, or assertion of liability against [Western Surety] or [Bear] upon any Bond shall be settled, compromised, tendered, or defended. [Western Surety's] decision in such regard shall be binding and conclusive upon the Indemnitors.

(Indemnity Agreement 2).

Western Surety argues that "there is no dispute that [Western Surety] performed its duties to Bear, the Bond principal, by making payments to Bond claimants after investigating and making its best efforts to defend the claims." (Pl.'s Mot. Partial Summ. J. 20). Defendants do not dispute the language of the agreement, nor Niles' agreement to these terms. (*See* Answer ¶¶ 14-15; Niles Resps. Pl.'s Requests Admis. 2). Instead, Defendants contend that "there are genuine disputes of material fact about whether [Western Surety] did, in fact, make such efforts" to defend the claims. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J. 5). In essence, Defendants argue that Western Surety did not issue the payments in good faith (i.e., a condition of the Indemnity Agreement), because it "failed to assert an available defense under Alabama law and the applicable subcontracts." (Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J. 5). The referenced defense is based on the "pay if paid" provisions that were present in all of Bear's contracts

10

with its subcontractors. (*See* Subcontractor Agreement Excerpt 2). Defendants contend that these provisions "make it clear that Bear's obligation to pay subcontractors was expressly contingent upon Bear being paid by the Huntsville Electric Utility Board . . . ." (Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J. 5-6). To this end, Defendants rely on Alabama caselaw which provides that " a surety under a payment bond can be liable only to the extent the principal is liable." *Keller Constr. Co. of NW Fla. v. Hartford Fire Ins. Co.*, 279 So. 3d 579, 588 (Ala. Civ. App. 2018) (citations omitted) (internal quotations omitted).

  As noted above, the Huntsville Electric Utility Board did not pay Bear in full for the Bond project. (*See* Niles Resps. Pl.'s Requests Admis. 6-7). Despite Bear receiving only "about 60% of the retainage from the Huntsville Electric Board[,]" Western Surety's settlement offers were based upon the subcontractors' demands to be paid in full for services rendered. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J. 7; *see* Desantis Decl. ¶¶ 8, 12, 22, 25). Thus, Defendants contend that "[Western Surety] cannot establish as a matter of law that it paid the Bond claims in good faith when it paid retainage claims in full despite knowing that Bear only received" a portion of the amount it was owed for the completed project. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J. 7). Indeed, the "pay if paid" provisions may have provided Western Surety with a viable affirmative defense to assert during its settlement negotiations. *See Lemoine Co. of Ala., LLC v. HLH Constructors, Inc.*, 62 So. 3d 1020, 1028 (Ala. 2010) (holding that a subcontractor was not entitled to payment when the contractor had not been paid); *see also Keller Constr. Co.*, 279 So. 3d at 589 (holding that a surety was entitled to assert an affirmative defense that it was not liable to pay the subcontractor if the contractor had not yet been paid).

  Western Surety responds by stating that even if the "pay if paid" affirmative defense was available to it during settlement negotiations with the subcontractors, this does not negate the fact it made the payments in good faith. (*See* Pl.'s Reply Mot. Partial Summ. J. 7, DN 45). Based upon the terms of the Indemnity Agreement, Western Surety is correct. The language in the agreement is clear:

"[Western Surety] shall have the exclusive right and power to determine for itself and the indemnitors and Principals whether any claim, suit, or assertion of liability against [Western Surety] or [Bear] upon any Bond shall be settled, compromised, tendered, or defended." (Indemnity Agreement 2). Under Alabama law, "a surety is entitled to reimbursement from a principal for claims made pursuant to [an indemnity] agreement." *Frontier Ins. Co. v. Int'l, Inc.*, 124 F. Supp. 2d 1211, 1213 (N.D. Ala. 2000) (citing *Doster v. Cont'l Cas. Co.*, 105 So. 2d 83, 85-86 (Ala. 1958)). "The only exception . . . arises when the payment has been made 'through fraud or lack of good faith' on the part of the surety . . . ." *Id.* (internal quotations omitted) (citations omitted). In surety contracts, "lack of good faith 'carries an implication of a dishonest purpose, a conscious doing of wrong, a breach of a duty through motives of self-interest or ill will.'" *Id.* at 1214 (quoting *Elmore v. Morrison Assurance Co.*, 502 So. 2d 378, 380 n.1 (Ala. 1987)).

Defendants have adduced no proof that Western Surety acted in bad faith. Defendants argue that Western Surety failed to assert an available affirmative defense under Alabama law and question whether Western Surety made its best efforts to defend the claims against Bond 859. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J. 5). This does not amount to bad faith. Under Alabama law, "a lack of diligence or negligence is not the equivalent of bad faith, indeed even gross negligence cannot support a finding of bad faith." *Frontier Ins. Co.*, 124 F. Supp. 2d at 1214 (citations omitted). Further, "[c]onclusory allegations of bad faith are insufficient to defeat a motion for summary judgment in favor of a surety to enforce an indemnification agreement." *Id.* (citation omitted). By the plain language of the Indemnity Agreement, Western Surety alone had the discretion to determine whether to settle the claims against Bond 859, and Defendants are bound by this decision. (Indemnity Agreement 2). Courts applying Alabama law have upheld similar discretionary clauses in indemnity agreements between a surety and contractor. *See Gray Ins. Co. v. Kis Stucco & Stone, Inc.*, No. CV 13-00287-KD-B, 2014 WL 12600294, at *7 (S.D. Ala. May 16, 2014) ("The language of the contract gives [the surety] broad discretion in determining what payments

12

it may be 'liable for' . . . . In sum, the surety is given sole discretion to determine whether liability exists under the bond.").

Even if Western Surety was incorrect regarding its liability to the various subcontractors, the failure to assert a "pay if paid" affirmative defense does not amount to bad faith. The Southern District of Alabama has previously determined that "actual liability is not a prerequisite to a surety's right to reimbursement." *Hartford Cas. Ins. Co. v. Hyperion Const., LLC*, No. 10-00539-CB-M, 2012 WL 74754, at *3 (S.D. Ala. Jan. 10, 2012) (internal quotations omitted) (citing *Frontier*, 124 F. Supp. 2d at 1215). In *Hartford*, the defendant indemnitors made arguments similar to the case at hand: that a surety acted in bad faith by paying "claims for which [the principal] may not have been liable." *Id.* The court found this argument "meritless", stating that "the mere payment of claims—even those for which the principal has a valid defense—does not amount to bad faith." Because Western Surety did not act in bad faith, the terms of the Indemnity Agreement must be taken at face value. *See Alfa Life Ins. Corp. v. Johnson*, 822 So. 2d 400, 404-05 (Ala. 2001) ("If the trial court determines that there is no ambiguity [in a contract], it must determine the force and effect of the terms of the contract as a matter of law." (internal quotation marks omitted) (citation omitted)).

In this case, the terms of the Indemnity Agreement are clear—Western Surety had the exclusive right to determine the merits of each subcontractor's claim against Bond 859, and Defendants, as indemnitors, are required to reimburse Western Surety for any losses incurred in defending the claims. (Indemnity Agreement 2). Under the Indemnity Agreement, a "loss" includes "any and every claim, demand, liability, cost, charge, suit, judgment, fee, interest on any amounts due [Western Surety], and expense, *including but not limited to attorney fees and consultant fees* incurred by [Western Surety] as the result of issuing or considering the issuance of a Bond." (Indemnity Agreement 1 (emphasis added)). "Loss" also includes "any cost incurred by [Western Surety] in bringing suit to enforce the obligation of any of the Indemnitors under [the] Agreement." (Indemnity Agreement 1). Defendants

13

were required to indemnify Western Surety for all losses incurred in defending the claims asserted by the subcontractors, and their failure to do so constitutes a breach of the agreement.

Western Surety's motion, therefore, is granted.[6] Defendants shall reimburse Western Surety the incurred costs of defending the claims against the subcontractors, including settlement costs and attorneys' fees. Moreover, Defendants shall reimburse Western Surety the losses incurred in bringing this action to enforce the indemnitors' obligations. To the extent that Western Surety seeks to require Defendants to deposit collateral against potential future losses, the motion is denied as moot.

### 3. *Remaining Claims (Counts II, III, and V)*

The Court has already granted Western Surety's motion regarding Defendants' liability. Moreover, the Court granted Defendants' motion, barring Western Surety the ability to demand that Defendants deposit more funds to defend against potential future claims. Western Surety correctly acknowledges that "its requests for exoneration (Count [II]) and other equitable relief in the Complaint (Counts [III] and [V]) may now be moot and/or unnecessary, if this Court finds that [Western Surety] has an adequate remedy at law – *i.e.,* damages for Defendants' failure to indemnify [Western Surety]." (Pl.'s Mot. Partial Summ. J. 23). Count II (i.e., equitable indemnity) seeks the same remedy (i.e., indemnification) as Count I, which has been granted. (*See* Compl. ¶¶ 30-34). Counts III and V (i.e., *quia timet* and specific performance) seek to require Defendants to advance money and/or property as

---

[6] There is some debate between the parties concerning the extent to which Defendants and/or Bear were required to assist and provide relevant information to Western Surety when it was investigating the claims against Bond 859. (*See* Pl.'s Reply Mot. Partial Summ. J. 9; Defs.' Reply Mot. Partial Summ. J. 2). Part of this disagreement concerns a factual dispute regarding whether Niles misrepresented his receipt of funds from the Alabama project's eventual payout to Bear. (Pl.'s Reply Mot. Partial Summ. J. 4-5; Defs.' Reply Mot. Partial Summ. J. 2). Another aspect involves whether Plaintiff should have known the subcontractors could not recover their claims in full when Niles, in April 2021, informed Western Surety "that Huntsville only paid Bear about 50% of the retainage . . . ." (Pl.'s Reply Mot. Partial Summ. J. 9-10; Defs.' Reply Mot. Partial Summ. J. 2). These factual disputes, however, are immaterial to the finding of summary judgment for Western Surety. Defendants have failed to show that Western Surety acted in bad faith under Alabama law, and the terms of the Indemnity Agreement clearly demonstrate that Defendants are liable to Western Surety for the extent of its loss.

collateral to protect from future losses— a demand which is now moot. (*See* Compl. ¶¶ 36, 43-45). These remaining claims, therefore, are dismissed.

### C. **Attorneys' Fees**

Defendants initially argued that Western Surety failed to show there is no genuine issue as to any material fact in relation to its purported attorneys' fees expended. (Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J. 8). Specifically, they claim that Western Surety "has provided nothing to the Court to support its claim for attorneys' fees other than the bare total amounts of fees and expenses set out in Ms. DeSantis's declaration." (Defs.' Resp. Pl.'s Mot. Partial Summ. J. & Defs.' Cross-Mot. Partial Summ. J. 8). Under the Little Miller Act, subcontractors are only entitled to "reasonable attorney fees." Ala. Code § 39-1-1. Thus, Western Surety must provide evidence that the attorneys' fees and costs it seeks to recover from Defendants were reasonable. *See Am. S. Ins. Co. v. Peavy Constr. Co., Inc.*, No. 17-0385-CG-N, 2019 WL 1602005, at *5 (S.D. Ala. Apr. 12, 2019) (directing the plaintiff surety to "submit a final accounting of its reasonable attorneys' fees" to the court upon granting its motion for summary judgment against defendant indemnitors).

Defendants are incorrect that this need for further proof of attorneys' fees creates a genuine issue of material fact to preclude summary judgment. As demonstrated in *Peavy*, a court can grant summary judgment on an indemnitor's liability before the final calculation of reasonable fees. *See Peavy*, 2019 WL 1602005, at *5. Western Surety has proposed to "submit a separate motion under the appropriate rules with testimonial support for the reasonableness of the fees," which Defendants acknowledge. (Pl.'s Reply Mot. Partial Summ. J. 11; Defs.' Reply Mot. Partial Summ. J. 2). Thus, Western Surety shall submit a separate motion under Fed. R. Civ. P. 54(d)(2), supporting all attorneys' fees and expenses it seeks to recover—in both defending the subcontractor claims and in bringing this action. Western Surety shall have 30 days from the date of this judgment to file its Fed. R. Civ. P. 54 motion. *See* LR 54.4.

## V.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Cross-Motion for Partial Summary Judgment (DN 44) is **GRANTED**. Western Surety's claims for *quia timet* (Count III), breach of indemnity agreement (Count IV) and specific performance (Count V), to the extent they seek to require Defendants to deposit collateral against potential future losses, are **DISMISSED**.

2. Plaintiff's Motion for Summary Judgment (DN 39) is **GRANTED IN PART** and **DENIED IN PART**. Western Surety's claims regarding Defendants' liability for indemnity (Count I) and breach of Indemnity Agreement (Count IV) are **GRANTED**, and judgment is entered against Defendants jointly and severally in the amount of $730,776.02. Western Surety's claim for breach of Indemnity Agreement (Count IV), to the extent it requires Defendants to deposit collateral for potential future losses, is **DENIED** as moot. All other claims are **DISMISSED** as moot or duplicative of the remedy already provided.

3. Defendants shall reimburse Western Surety's reasonable attorneys' fees and expenses incurred in defending the claims brought by Genesis, RC, RBM, LTD, Frazier, and L&M, as well as the fees and expenses incurred by bringing this action. Western Surety is ordered to submit a separate motion under Fed. R. Civ. P. 54(d)(2), demonstrating appropriate support for its calculations of attorneys' fees and expenses. Western Surety shall submit this motion no later than **February 27, 2025**. Defendants shall have 14 days to respond.

Greg N. Stivers, Chief Judge
United States District Court

February 11, 2025

cc:    counsel of record