UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:22-CV-00098-GNS-HBB

WESTERN SURETY COMPANY                                          PLAINTIFF

v.

BRETT NILES et al.                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Attorneys' Fees (DN 52).  The motion is ripe for adjudication.

## I.     BACKGROUND

Plaintiff Western Surety Company ("Western Surety") filed this declaratory judgment action against Brett Niles ("Niles"); Big Bear Leasing, Inc. ("Bear Leasing"); Big Bear Investments, LLC ("Bear Investments"); Bear Communications of New Mexico, Inc. ("Bear New Mexico"); and the Oaks Fame Farm, LLC ("Oaks") (collectively, "Defendants").  (Compl. ¶¶ 1-6, DN 1).  Western Surety sought a declaration that Defendants owed a duty to indemnify Western Surety for settlements paid to Niles' subcontractors for uncompensated work as well as attorneys' fees it accrued in defending claims against it.  (Compl. 12-13).

On February 11, 2025, the Court granted, in part, Western Surety's motion for summary judgment and ordered Defendants to pay Western Surety $730,776.02 as reimbursement for the settlement amounts Western Surety paid to the subcontractors.  (Mem. Op. & Order 16, DN 49).[1]

---

[1]  Western Surety has informed the Court that it subsequently received payments totaling $30,239.65 from Bear's bankruptcy proceedings, and thus "the final judgment against Defendants in this matter should be reduced by" this amount.  (1st Notice Payment 1, DN 50; 2d Notice Payment 1, DN 60).

The Court also ordered Defendants to "reimburse Western Surety's reasonable attorneys' fees and expenses incurred in defending the claims brought by [the subcontractors] . . . , as well as the fees and expenses incurred by bringing this action." (Mem. Op. & Order 16). Western Surety now moves to recover its attorneys' fees pursuant to that Order and Fed. R. Civ. P. 54(d)(2). (Pl.'s Mot. Att'ys' Fees, DN 52).

## II.  <u>STANDARD OF REVIEW</u>

"In the Sixth Circuit, courts use the 'lodestar' method to calculate a reasonable fee, which involves 'multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.'" *EMW Women's Surgical Ctr., P.S.C. v. Bevin*, No. 3:17-CV-189-GNS, 2018 WL 10229473, at *5 (W.D. Ky. Sept. 28, 2018) (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008)).[2] "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Id.* (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). "Once a Court has determined a reasonable hourly rate, it must multiply that rate by 'the proven number of hours reasonably expended on the case by the attorney.'" *Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212, 223 (W.D. Mich. 2018) (quoting *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005)).

---

[2] The Court applied Alabama law in granting summary judgment. (*See* Mem. Op. & Order 5-7 (conducting a choice of law analysis)). Without citing Alabama law, both parties agree that the lodestar analysis is the proper method for determining attorneys' fees in the current matter. (Pl.'s Mot. Att'ys' Fees 2-3 (citing Sixth Circuit precedent); Defs.' Resp. Pl.'s Mot. Att'ys' Fees 2, DN 58 (citing precedent from the Western District of Kentucky)). The Alabama Supreme Court has adopted the lodestar method. *See CBS Holdings, LLC v. Hexagon US Fed., Inc.*, No. SC-2024-0308, 2025 WL 1910167, at *8 n.4 (Ala. July 11, 2025) (applying a method that the Alabama Supreme Court states "is analogous to the federal 'lodestar' method . . . ."). Because the standard is comparable between Alabama and Kentucky law and the "parties do not disagree regarding the applicable legal standard[,]" the Court will apply the lodestar method under Sixth Circuit guidance. (Defs.' Resp. Pl.'s Mot. Att'ys' Fees 2).

For the Court to accept the claimed time expenditure, "the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Id.* (quoting *United Slate, Tile & Composition Roofers Damp & Waterproof Workers Ass'n Local 307 v. G. & M. Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)). "After calculating an initial valuation, the Court may then, within its discretion, 'adjust the lodestar to reflect relevant considerations peculiar to the subject litigation.'" *Bevin*, 2018 WL 10229473, at *5 (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 373, 349 (6th Cir. 2000)).

## III.    DISCUSSION

### A.    Whether the $53,283.54 Requested for the Bond Claims Is Reasonable

Western Surety seeks a total of $146,439.49 in reasonable attorneys' fees, costs, and expenses. (Pl.'s Mot. Att'ys' Fees 6). $53,283.54 of this amount comprises fees incurred in defending the Bond claims, as noted in the Memorandum Opinion and Order and based upon the declaration of Western Surety's authorized representative, Lisa DeSantis ("DeSantis"). (Mem. Op. & Order 8-9; 1st DeSantis Decl. ¶¶ 33-35).[3]  As Western Surety points out, Defendants do not contest the amount claimed in defending the six Bond claims, with one small exception. (Pl.'s Reply Mot. Att'ys' Fees 1-2, DN 59). This exception pertains to 1.5 hours (totaling $525.00) billed in the RC Underground matter that was spent participating in the initial creditors meeting in

---

[3] Western Surety has provided the Court with invoices detailing every billed hour of work in defending the Bond claims. (*See* Pl.'s Mot. Att'ys' Fees Ex. 9, DN 57-1; Pl.'s Mot. Att'ys' Fees Ex. 10, DN 57-2; Pl.'s Mot. Att'ys' Fees Ex. 11, DN 57-3; Pl.'s Mot. Att'ys' Fees Ex. 12, DN 57-4; Pl.'s Mot. Att'ys' Fees Ex. 14, DN 57-6; Pl.'s Mot. Att'ys' Fees Ex. 15, DN 57-7). These invoices and amounts billed comport with the figures provided by DeSantis. (1st DeSantis Decl. ¶¶ 33-35). Fee rates ranged between $160.00 and $350.00 per hour. (*See generally* Pl.'s Mot. Att'ys' Fees Exs. 9-12, 14-15).

Bear's bankruptcy case. (Pl.'s Mot. Att'ys' Fees Ex. 10, at 5; Defs.' Resp. Pl.'s Mot. Att'ys' Fees 4). Although Defendants dispute that this fee is relevant, Western Surety counters that "[Bear's] bankruptcy was an 'Event of Default' under the Indemnity Agreement [and that] it is difficult to conceive how Indemnitors are not responsible for costs incurred responding to the bankruptcy given the broad definition of 'Loss'" under the Indemnity Agreement. (Pl's Reply Mot. Att'ys' Fees 6).

Western Surety correctly asserts an indemnitor's voluntary filing for bankruptcy constitutes default under the Indemnity Agreement. (*See* Indemnity Agreement 1). Moreover, "Loss" is defined as:

> (a) any and every claim, demand, liability, cost, charge, suit, judgment, fee, interest on any amounts due [Western Surety], and expense, including but not limited to attorney fees and consultant fees incurred by [Western Surety] as the result of issuing or considering the issuance of a Bond; (b) any cost incurred by [Western Surety] in the process of procuring, or attempting to procure release from liability under a Bond; (c) the cost to [Western Surety] of making any independent investigation of a claim, demand, or suit arising under a Bond; (d) any cost incurred by [Western Surety] in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement; and (e) any other cost incurred by [Western Surety] in good faith as a result of having issued or procured the issuance of a Bond.

(Indemnity Agreement 1). This broad definition of "loss" corresponds to the costs recoverable by Western Surety. It is clear that participation in Bear's bankruptcy case as a creditor constitutes a "cost to incurred by [Western Surety] in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement" and it, therefore, is a valid loss under the agreement. (Indemnity Agreement 1). As such, because Defendants must reimburse all costs associated with defending the Bond claims, and they have presented no other objections to the amount delineated by Western Surety's invoices, the motion is granted as to the $53,283.54.

### B.    Whether Non-Bond Fee of $93,155.95 Is Reasonable

Second, Western Surety seeks $93,155.95 in reimbursement for the costs associated with bringing this action against Defendants.[4]  Defendants have two chief objections:  (1) the overall amount of $93,155.95 is excessive and should be reduced by 35% to $61,836.87;[5] and (2) some work included in the invoices ($3,443.10) should be considered non-compensable.  (Defs.' Resp. Pl.'s Mot. Att'ys' Fees 2-6).

Regarding the first objection, Defendants do not claim that the hourly rates of Western Surety's attorneys are excessive—rather, they assert that too much time was spent on this action. (Defs.' Resp. Pl.'s Mot. Att'ys' Fees 2).[6]  They posit that $93,155.95 "is excessive for a case that involved the preparation and service of one complaint, one initial disclosure, an exchange of written discovery and documents, and the preparation of one motion for summary judgment." (Defs.' Resp. Pl.'s Mot. Att'ys' Fees 2).  Defendants effectively request the Court to reduce the total amount billed because it represents too many hours for a case that had "no motion practice relating to discovery, no depositions . . . , and no expert witnesses."  (Defs.' Resp. Pl.'s Mot.

---

[4] The figure was previously $70,496.24 as of April 30, 2024; however, DeSantis has provided the Court with updated invoices and attests the current amount billed to Western Surety for the work of law firms Wallace Jordan as well as McBrayer (local counsel) is $93,155.95.  (3d DeSantis Decl. ¶¶ 4-5, DN 52-1; Pl.'s Mot. Att'ys' Fees Ex. 13, DN 57-5; *see also* Pl.'s Mot. Att'ys' Fees Ex. 16, DN 57-8).

[5] It is not clear how Defendants arrived at this exact figure, as a 35% reduction of $93,155.95 would equal $60,551.37.

[6] Because Defendants do not contest the hourly rate, the Court will assume it is reasonable for the purposes of the lodestar analysis.  It should be noted that Western Surety's attorneys maintained a maximum rate of $350.00 per hour on this case, allowing their client a substantial discount from their normal hourly rates for associates and partners.  (*See* Robinson Decl. ¶¶ 7-20, DN 52-2; *see also* Paul Decl. ¶¶ 7-9, DN 53-1).  This Court previously has approved an hourly rate of $350.00. *See, e.g., Thies v. Life Ins. Co. of N. Am.*, 839 F. Supp. 2d 886, 895-96 (W.D. Ky. 2012); *Brooksbank v. Koch*, No. 3:16CV-00668-JHM, 2019 WL 7407401, at *3 (W.D. Ky. Apr. 15, 2019); *Marshall v. Rawlings Co.*, No. 3:14-CV-359-TBR, 2018 WL 3028574, at *7 (W.D. Ky. June 18, 2018).

Att'ys' Fees 2).  Under the lodestar analysis, a court must determine "the proven number of hours reasonably expended on the case by the attorney." *Martinez*, 325 F.R.D. at 223 (quoting *Isabel*, 404 F.3d at 415).  Western Surety has provided detailed invoices demonstrating the work involved bringing this action against Defendants, and these documents as well as attorney declarations contain "sufficient detail and probative value" to authenticate the hours worked. *Id.*

Western Surety counters that "Defendants bear responsibility for creating issues that inflated the cost of this case and prolonged its resolution." (Pl.'s Reply Mot. Att'ys' Fees 2).  This includes delays due to Niles' evasion of service and Defendants' own requests for thousands of documents.  (Pl.'s Reply Mot. Att'ys' Fees 2-5).  Furthermore, although Defendants question the time billed for Western Surety's motion for summary judgment, they fail to account for the complexity of the issues in this case and the amount of exhibits requiring authentication and preparation.  (*See* Pl.'s Reply Mot. Att'ys' Fees 5).  Defendants do not specifically challenge the hours billed for the summary judgment motion; rather, they simply state a 35% general cut is necessary and that "[a]pproximately $62,000 is a much more reasonable total fee for this lawsuit[,]" without any objective justification.  (Defs.' Resp. Pl.'s Mot. Att'ys' Fees 3).  The Court finds that the fees charged are reasonable based upon the detailed exhibits provided by Western Surety.

Lastly, Defendants seek a reduction of $3,443.10, for what they allege are non-compensable services.  (Defs.' Resp. Pl.'s Mot. Att'ys' Fees 4-6).  Specifically, Defendants contest the billing of four types of tasks referenced in the invoices:  (1) time spent monitoring another action against Defendants, (2) time spent in Bear's bankruptcy proceeding, (3) time spent for "clerical" work, and (4) the administrative fee of local counsel.  (Defs.' Resp. Pl.'s Mot. Att'ys'

Fees 4-6).   None of these objections are well-taken, and the Court finds that all constitute recoverable fees for Western Surety.

First, Western Surety avers that time was spent monitoring another action against Defendants "because of the similarity of the allegations and potential defenses [in that case] and because of [Western Surety's] desire to have priority in securing the entry of judgment"; thus, "[t]he work was incidental but related to the competent prosecution of the Indemnitors."  (Pl.'s Reply Mot. Att'ys' Fees 5-6).  This rationale appears to be reasonable, and these charges qualify as a "loss" under the Indemnity Agreement, as it is a "cost incurred by [Western Surety] in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement."  (Indemnity Agreement 1).  Second, the Court has already determined that the time spent in the bankruptcy proceeding was a reasonable use of time which also qualified as a "loss" under the agreement.

Third, the "clerical" work that Defendants contest comprises "time that its Alabama counsel spent reviewing its local counsel's invoices for payment[,]" totaling $350.00.  (Defs.' Resp. Pl.'s Mot. Att'ys' Fees 4).  In one case, a sister court found that "some of the billed tasks . . . may appear clerical, [yet] the Court accepts the [party's] argument that these tasks had to be performed by an attorney or paralegal familiar with facts and law of the case" and awarded attorneys' fees.  *See U.S. ex rel. LeFan v. Gen. Elec. Co.*, No. 4:00-CV-222, 2008 WL 152091, at *4 (W.D. Ky. Jan. 15, 2008), *aff'd in part and remanded*, 397 F. App'x 144 (6th Cir. 2010).  In this case, the Court similarly accepts that the work spent reviewing the invoices was a reasonable use of the attorney's time.  Finally, Western Surety rebuts Defendants' contention regarding the administrative fee of local counsel (totaling $483.10) by stating that the "local counsel administrative fee is an expense applied to every McBrayer invoice and is not within Plaintiff's control."  (Pl.'s Reply Mot. Att'ys' Fees 6).  Given that the definition of "loss" under the Indemnity

Agreement includes "any other cost incurred by [Western Surety] in good faith as a result of having issued or procured the issuance of a Bond[,]" the Court finds that this fee is also reasonable. (*See* Indemnity Agreement 1).

Western Surety has provided support for its fees incurred in defending the Bond claims and bringing this action, and Defendants have not provided substantial objections. Accordingly, the Court finds that the proposed attorneys' fees are reasonable. Western Surety's motion is granted.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Plaintiff's Motion for Attorneys' Fees (DN 52) is **GRANTED**. Plaintiff is entitled to reimbursement of attorneys' fees, costs, and expenses in the amount of $146,439.49 from Defendants.

2.    In the Memorandum Opinion and Order (DN 49), the Court concluded that Defendants were jointly and severally liable to Western Surety in the amount of $730,776.02. That amount is reduced by $30,239.65, reflecting the funds received by Western Surety from Bear's bankruptcy proceeding.

3.    The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

August 4, 2025

cc:    counsel of record